## COMMONWEALTH *vs.* INHABITANTS OF CAMBRIDGE.

In a suit by the Commonwealth against a town, to recover back money overpaid for the support of State paupers, the accounts of the agent of the town, respecting those .paupers, although examined by a committee, who reported that they were correct, and whose report was accepted by a vote of the town, are not conclusive evidence against the defendants, but may be shown to have been erroneous; and the court may appoint an auditor to examine the vouchers and evidence, and to state the accounts and make report thereof.

In such case, the auditor may inquire into the value of the paupers' labor, which was estimated and credited in the agent's accounts, and may thereupon state an account· in which that labor is estimated at a less value than in the accounts of the agent.

Where an auditor reports the evidence concerning the value of labor which is the subject of an account that is referred to him, his report may be impeached by the evidence reported, and by other evidence, and may be controlled by the jury.

Where parties agree that an auditor may state the evidence on which he founds his report, and he states, in his report, only the substance of the evidence, his report may be used as evidence, on the trial, by the party in whose favor it is made. The other party, if he suppose any material evidence to be omitted in the report, should apply to the auditor, before the trial, to supply the omission.

A town, in stating an account with the Commonwealth as to the support of State paupers, is bound to credit the value of the paupers' labor only, and not any share of the profits, if there be any, which the town derives from their labor.

The Commonwealth is liable for costs, under the Rev. Sts. *c.* 121, § 22, in suits commenced before those statutes went into operation.

ASSUMPSIT on the money counts, to recover several sums paid to the defendants by the plaintiffs from the year. 1829 to the year 1835 inclusive, for the support of State paupers, on the allegation, that more money was paid to, and received by, the defendants, in each of those years, than was due for such support.

The trial was before *Putnam*, J. who reported the case as follows : The defendants admitted that the money, which the plaintiffs sought to recover back, had been paid to them, and admitting, *pro formâ*, that the plaintiffs could make out a *primâ facie* case to recover it back, they offered in evidence a report and supplemental report of Joseph Willard, Esq., an auditor appointed by this court to audit the accounts of the defendants in regard to the support of the paupers by the defendants ; and they maintained that, by said reports, it appeared that the expense of supporting the State paupers by the defendants had, in each year, amounted to a larger sum than the value of said paupers labor, and the moneys so paid by the Commonwealth.

The Attorney General objected to the admission of these re-
ports. 1st. Because the subject to be inquired about was not
one to which the power of the court to appoint an auditor ex
tended, inasmuch as the only matter of account was a stated and
settled account kept by the defendants in the books of their
agents, and no longer open to audit or change. And for the
purpose of sustaining this objection, he exhibited the books of
the alms-house, the records of the town appointing commit-
tees to examine the accounts, the reports of said committees,
and the votes of the town, in legal town meeting, accepting said
reports. But, for the purposes of the trial, this objection was
overruled.

2d. The Attorney General objected to the report, that if
it was admissible at all, yet that the value of the paupers' labor
had been settled by the defendants and agreed to, and could not
be the subject of revision by the auditor. And he further ob-
jected to all that part of the reports in which the auditor had
recited the substance and purport of the evidence of witnesses
before him. Both which objections, for the purposes of the
trial, were overruled, and the report and supplemental report
were admitted.

The Attorney General moved the court to instruct the jury,
that in the stating of the accounts by the auditor, the charge for
rent of the alms-house, amounting in each year to $420, and
the charge of interest on the permanent stock, $108, (total,
$528,) were not admissible in point of law : That the auditor,
in stating his opinion of the value of the paupers' labor, had ex-
ceeded his authority ; and inasmuch as the price had been fixed
by the town, the price so fixed was the proper price to be tak-
en into the account, unless, by evidence other than the auditor's
report, a different value should be determined on by the jury.
He further asked the court to instruct the jury, that all the
profits, derived to the town from any manner of work on which
the town employed said paupers, was to be taken as a diminution
of the charge of supporting them ; and as it appeared, in the
auditor's report, that no credit had been given for such profit,
the jury should correct the report in that particular. He fur-

ther moved the court to instruct the jury, that in point of law all the charges for land hire, amounting, in the year ending in April 1831, to $ 168·98, and all the charges for the like purpose in the other years, should be stricken out, or that credit should be given for the products of the land so hired ; it appearing by the auditor's report, as the plaintiffs contended, that he had not credited the products of the land.   He further moved the court to instruct the jury, that if it appeared to them that the price of the Brighton Ledge (so called) was charged upon and paid out of the funds of the alms-house, the proceeds of the said ledge should be credited in account as part of the funds for which the defendants are accountable.   He further moved the court to instruct the jury, that the men who labored on the road, as described in the auditor's report, are not chargeable as paupers, and that the plaintiffs are entitled to recover back all the money charged in the defendants' account for the support of said men.

But the judge, intending to reserve all questions upon these motions for the consideration of the whole court, overruled the same, and refused to give the instructions prayed for ; but, on the subject of the paupers' labor, he directed the jury, that the auditor's report was to be taken as satisfactory evidence, unless impeached ; that if the other evidence in the case did, in their judgment, impeach it, they should correct that item ; but if otherwise, they might return a general verdict for the defendants.

A verdict was returned for the defendants ; and the Attorney General moved for a new trial, *first*, for error in the rulings and instructions of the judge ; and *secondly*, because the verdict was against the weight of the evidence.

It appeared from the papers in the case, and from the auditor's reports, that State paupers and town paupers were supported together in the defendants' alms-house establishment ; that the real estate connected with that establishment cost $ 7000 ; that the defendants bought two stone ledges, one of them in Brighton, for $ 50 each, for which sum they were entitled to take away as much stone as they pleased, for a certain time, and that about $ 2000 worth was taken from each ledge

and sold, which " proved to be a good speculation " ; that the principal part of the work on the ledge was done by State pau pers ; that the defendants also hired thirty or thirty-five acres of land, on which work was done by the inmates of the alms-house, in raising vegetables, &c. which were sold.

From the accounts of the defendants' agents concerning the support of paupers, which had been examined and reported upon by a committee, &c. (as mentioned in the judge's report, *ante*, p. 36,) it appeared, that for five years, ending April 19th 1833, " the profits of the alms-house, in addition to supporting the town poor," was estimated at $ 9817·84. In these accounts, however, the paupers' labor on the roads, &c. was estimated at 50 cents per day, and no interest was computed on the cost of the real estate attached to the almshouse, nor on the amount of stock and other personal property. Said committee reported, that the " pecuniary advantages of the institution had been much overrated by the usual mode of adjusting the accounts," and that by charging interest on the abovementioned property, and allow- ing 30 cents per day (which the committee deemed the full val- ue) for pauper's labor, the profits of the alms-house establish- ment for said five years would be only $ 2538·89.

The auditor reported, that 25 cents per day was as much as the paupers' labor was worth ; and he stated an account, from which (as stated in the report of the judge, *ante*, p. 35,) it ap- peared, that the expense incurred by the defendants in the sup- port of State paupers exceeded, yearly, the value of their labor and the money received from the Commonwealth. In stating this account, the auditor charged the defendants with the earn- ings (i. e. the value of the labor) of the State paupers, but did not charge them with any profits, real or supposed, which they derived, or were supposed to derive, from said paupers' labor.

This case was argued and decided at a former term.

*Austin*, (Attorney General,) for the plaintiffs.

*Greenleaf & Buttrick*, for the defendants.

WILDE, J. This case comes before us again, on a motion by the Attorney General for a new trial, for sundry rulings of the judge presiding at the trial, alleged to be erroneous, and be-

cause the verdict is against the weight of the evidence. After the decision of several questions of law, at a former term, (20 Pick. 267) an auditor was appointed by the court to hear the parties, and examine their vouchers and evidence, and to state the accounts, and make report thereof to the court. The auditor made his report, which was recommitted, on the motion of the Attorney General, and a supplemental report was made, and both reports were offered in evidence at the trial by the defendants' counsel.

The Attorney General objected to the admission of the evidence, on the ground that the court had no power by law to appoint an auditor, inasmuch as the only matter of account was a stated and settled account kept by the defendants in the books of their agents, and no longer open to audit or change. This objection is founded on a mistaken principle. It is very clear that the settlement of accounts by the defendants with their agents, especially under the circumstances relating thereto, is not binding upon them in this suit. In that settlement, it was of little importance to the defendants to estimate accurately the price of labor, or the earnings of the paupers, which in this suit is of great importance. These accounts, however, and the votes of the town accepting the reports of a committee of the town who examined the accounts, and of the overseers of the poor, were competent evidence against the defendants, but were not conclusive. And they were so admitted by the auditor. The defendants, however, were allowed to prove that the accounts were inaccurate, and especially as to the earnings of the paupers ; and this evidence we consider competent. The admission of a party can never amount to an estoppel, unless the party to whom the admission was made was induced thereby to change his condition, which would be prejudicial to him, if the party making the admission were not bound thereby, and estopped to contradict or disprove it. *Heane* v. *Rogers*, 9 Barn & Cres. 586.

The Attorney General further objected, that if the report was admissible at all, yet that the value of the paupers' labor had been settled by the defendants, and could not be the sub-

Commonwealth *v.* Inhabitants of Cambridge.

ject of revision by the auditor. This objection depends on the same ground as the other objection does, and cannot be sustained.

Nor can we admit that the auditor has exceeded his authority, as the Attorney General contends, by estimating the value of the paupers' labor. The auditor was directed to state the accounts, and report the same to the court. To do this, it was necessary to ascertain the value of the paupers' labor. The auditor's judgment is not conclusive ; it may be impeached by the evidence reported, and by other evidence, and it may be controlled by the jury. But his judgment is entitled to great respect, for he appears to have examined the subject most thoroughly. The witnesses best acquainted with the ability of the paupers to labor, and the labor they actually performed, were examined, and every other source of information was resorted to, which could be expected to aid him in forming a correct judgment. This evidence, and the reasons of his opinion, are reported ; so that the jury had ample means to correct the auditor's judgment. It was said by the Attorney General, that the evidence should not have been reported, or if any part were reported, the whole should have been. We un derstand that the parties agreed. that the evidence should be reported. And the only objection on this point, made at the trial, was to that part of the reports in which the auditor had recited the substance and purport of the testimony of the witnesses. The report of the evidence appears to be very voluminous, and sufficiently full. Whether any thing material has been omitted, we cannot determine ; but if there had been, the Attorney General should have applied to the auditor to supply the omission before the trial. But we have no means of knowing whether the objection applies to that part of the evidence relating to the earnings of the paupers. The evidence in that relation seems to be reported minutely, and very much at large.

Another objection is founded on a claim, in behalf of the Commonwealth, not only to the earnings of the paupers, as a diminution of the charge of supporting them, but to the profits which the town have derived therefrom by their labor in the defendants' alms-house establishment, or otherwise.

To this objection two answers have been given, which we deem satisfactory. The *first* is, that the town has derived no profit from their alms-house establishment, but have sustained heavy losses thereby. The auditor's report shows that it was an unprofitable concern from the beginning. The loss was small in 1831 ; but it does not appear that there was any profit. On this question, the auditor has made a most thorough examination of the accounts, and of all material facts, and his report of the result of his examination is fully sustained by the evidence. This was a question of fact for the jury to decide ; and if the case depended on this question, the jury were certainly warranted, by the weight of the evidence, to return a verdict for the defendants.

But the case does not depend upon the determination of this question ; for, in our judgment, the *second* answer to the objection is conclusive, and the other question is of no importance. The defendants' counsel contend, that if they had derived any profit from the labor of the paupers in the alms-house establishment, they were not bound to credit any share thereof in their account with the Commonwealth ; that they were to credit the value of the labor only. And we are all clearly of this opinion. This establishment was an affair of the town's, in which the Commonwealth had no interest. If it were a joint concern of the Commonwealth and the town, they of course must share in profit and loss. But there is no pretence for charging the Commonwealth with any share of the loss ; and they have no right, therefore, to claim any share of the profits. They are only entitled to the earnings of the paupers. The laborers whom the town hired to oversee the paupers, and assist them in their work, might as well claim a share of the profits, if there were any, as the Commonwealth.

The view we have thus taken of the case disposes of several other exceptions relating to the expenses and supposed profits of the alms-house establishment ; and the other exceptions and reasons, assigned in support of the motion for a new trial, depend on questions of fact. The Attorney General, for instance, moved the court to instruct the jury, that certain persons who

4 *

labored on the road were not chargeable as paupers, and that the plaintiffs were entitled to recover back all the money charged in the defendants' account for the support of those men. The court very properly declined so to instruct the jury, for it was a question of fact for them to decide upon the evidence.

As to the motion to set aside the verdict, because it is against the weight of the evidence, we are of opinion, after a careful examination of it, that the verdict is sustained by the evidence, most satisfactorily. As before remarked, the auditor seems to have examined the case very thoroughly and with great ability, and we see nothing in the evidence to impeach, but much to sustain, his report.

In regard to the settlement of the accounts between the over seers of the poor and the town, on which the Attorney General seems to rely with some confidence, we do not think, considering the circumstances under which those accounts were made out, and especially as to the estimate of pauper labor, that they are entitled to much consideration. It was of no importance to the town to reduce the price of pauper labor ; and it is manifest that the charge was extravagant. The committee of the town *were of opinion, that it ought to* be reduced from 50 cents to 30 ; and one of the committee was of opinion, that 25 cents (the amount allowed by the auditor) was enough. Then, taking into consideration the other evidence reported by the auditor, we cannot say that, if his estimate had been somewhat lower, it would be against the weight of the evidence.

*Judgment on the verdict.*

After this opinion was pronounced, the defendants' counsel moved for costs, and cited the Rev. Sts. *c.* 121, § 22. The Attorney General suggested, that, as this action was commenced pefore those statutes went into operation, no costs were recoverable. But the court held otherwise, and directed that costs should be taxed for the defendants in the same manner as if the suit had been instituted by a citizen.